JAEGER MANUFACTURING COMPANY, Appellee, v. MARYLAND CASUALTY COMPANY, Appellant.

No. 45080.

NOVEMBER 18, 1941.

REHEARING DENIED MAY 5, 1942.

Miller, Huebner & Miller, for appellant.

Carl A. Burkman, Stipp, Perry, Bannister & Starzinger, and Donald D. Holdoegel, for appellee.

HALE, J.—Irving A. Potwin was a certified public accountant, licensed and authorized to engage in the public practice, and did so engage in that practice from the time of the passage of the law relating to public accountants up to the time of his death on August 16, 1938.

The plaintiff is a corporation, all the stock of which is held by members of the same family except as to one stockholder. W. C. Jaeger and his three sons, W. J. Jaeger, C. S. Jaeger, and A. C. Jaeger, are the members of the family holding the stock. W. J. Jaeger has been secretary of the corporation since 1913, and as such has at all times had charge of the books and records. In May 1917, Potwin was employed, the nature of his employment being one of the principal points in dispute, the defendant claiming that his duties were those of a bookkeeper, while the plaintiff insists that his employment was that of a certified public accountant. He received his first certificate as a certified public accountant on November 14, 1930, and continued to pay the annual fee in December of each year until and including the December prior to his death. His official bond was filed each year as required by law. The bond for the year 1932 was filed prior to December 9, 1931, with Potwin as principal and the Maryland Casualty Company, defendant herein, as surety. After Potwin's death, on August 23, 1938, Lloyd Fugill, a public accountant, was employed by the plaintiff to make an audit of the records of the company, and examined and used the pay-roll books, check registers, monthly bank statements, and cancelled checks. From this report and other evidence it was found that the plaintiff company had been systematically cheated, and that of their funds a large amount had been taken through the operations of Potwin.

It was conceded in argument and there is no dispute that during the years in question a large amount of plaintiff's money was taken by Potwin by means of padding the pay-roll register and the forgery of certain checks. The district court in its judgment found this amount to be the sum of $3,309, which, with interest from the various dates upon which the amounts were taken, aggregated the sum of $4,533.53, the amount of the judgment. There is no serious controversy as to the amount of money taken.

The bond, after the usual recitals, provides as conditions: " * * * that as Certified Public Accountant in State of Iowa, he will render a true account of his office and of his doings therein to the proper authority, when required thereby, or by law; that he will promptly pay over to the officer or person entitled thereto all moneys which may come into his hands by virtue of his office; that he will promptly account for all balances of money remaining in his hands at the termination of his office; that he will exercise all reasonable diligence and care in the preservation and lawful disposal of all money, books, papers, securities, or other property appertaining to said office, and deliver them to his successor or to any other person authorized to receive the same; and that he will faithfully and impartially, without fear, favor, fraud or oppression, discharge all the duties now or hereafter required of his office by law, and the securities on such bond shall be liable for all money or public property that may come into the hands of such officer at any time during his possession of such office, * * * ."

The trial was begun on the 6th day of April, 1939, before a jury, and proceeded until April 12, at which time, by stipulation of the parties, the jury was waived and it was agreed that all questions of fact as well as of law should be submitted to and determined by the court without a jury. The trial continued until April 24, when the cause was finally submitted. A great deal of the evidence submitted bore on the question of the peculations of Potwin and may be eliminated from the consideration of this case except as it may be necessary to refer to it in relation to the parties' differing theories as to the nature of the employment of Potwin.

The nature of the defense, as indicated by the motion of the defendant for judgment, consists of four principal grounds—the bar of the statute of limitations; that the duties of Potwin in his relation to the plaintiff were merely those of a bookkeeper and were not the statutory duties of the office of certified public accountant; and, basing the defense largely on such claimed fact that Potwin performed merely the duties of a bookkeeper and not the statutory duties of the office of certified public accountant, that since the provisions of the statute are written into the terms of the bond and such statute specifically

154

exempts the acts and omissions of persons employed for the purpose of keeping books, making trial balances, or performing general commercial bookkeeping, the defendant would not be liable on the bond, and that to so hold the defendant liable for the acts or omissions of Potwin would require the writing of an entirely new and different bond by judicial construction, which would be different than the bond required by the statute and in violation of the constitution. Defendant claims, as shown by such motion, that the proximate cause of the loss to the plaintiff was the failure on the part of the plaintiff to supervise the private clerical functions of Potwin, and was not the failure of Potwin to perform the public duties of the office of certified public accountant, and that by reason thereof the defendant is not liable; and it is further claimed that the forgeries are not chargeable to the surety.

I. As indicated, the facts are not seriously in dispute, either in this action or in the two companion cases. The statute defining certified public accountants is found in chapter 91-C1, section 1905-c6, Codes, 1931, 1935 (now chapter 91.1, section 1905.06, Code of 1939), as follows:

"All persons engaged in the practice of accountancy, within the meaning and intent of this chapter, who, holding themselves out to the public as qualified practitioners, and maintaining an office for this purpose, either in their own names, or as office managers and/or as managing officers of assumed name, association or corporate organization, perform for compensation, on behalf of more than one client, a service which requires the audit or verification of financial transactions and accounting records; the preparation, verification and certification of financial, accounting, and related statements for publication or for credit purposes; and/or who in general and incidental to such work, render professional assistance in any and all matters of principal and detail concerning accounting procedure and the recording, presentation and certification of financial facts."

Section 1905-c21 of the same chapter (section 1905.19, Code, 1939) contains the following exception:

"Nothing contained in this chapter shall be construed to

prevent: * * * The employment of persons by more than one individual firm or corporation for the purpose of keeping books, making trial balances, or performing general commercial bookkeeping.''

Further provisions of the chapter (sections 1905-c13 and 1905-c14, Codes, 1931, 1935, sections 1905.11 and 1905.12, Code, 1939) require each person granted a certificate to practice accountancy to give a bond in the sum of $5,000, to the auditor of state, before entering upon the discharge of his duties, for the faithful performance of the same; and to pay an annual fee of $10.

The question is: What is a certified public accountant licensed and bonded to do? One thing is to hold himself out as a certified public accountant. Wangerin v. Wisconsin State Board of Accountancy, 223 Wis. 179, 270 N. W. 57. The provisions of our statute are as given above. Section 1905-c21, Codes, 1931, 1935 (section 1905.19, Code, 1939), excepts attorneys and public bookkeepers. It is undisputed that Potwin held himself out, maintained an office, and did auditing work for various clients. Therefore, the remaining question at this point is whether there is substantial evidence to support the finding the trial court necessarily made that Potwin's work for the Jaeger Company was done as a public accountant. He was engaged to come to the offices of the Jaeger Manufacturing Company for a day or two twice each month for the purpose of auditing and balancing its books, securing its cancelled checks from the bank and reconciling the bank account with the records of the company—''because there were four brothers in the company, and we all wanted our skirts clear, and we thought it advisable and good business to have an outside man check and get it first handed.'' Potwin checked and totaled the bookkeeper's records of the pay-roll checks. He added the total of the pay-roll checks as shown by the record of the company and made one lump-sum entry in the check register for the total of pay-roll checks issued each week. Then he entered the total of checks issued by writing the total at the bottom of the page of the check register. None of these entries were original entries, and none is outside the duties frequently performed by public accountants in checking books.

At the end of each month Potwin posted in the ledger the totals shown by the check register which were distributed to the various categories of the business, such as factory, shipping, or shop. The bank account balances were also posted in the ledger monthly. The ledger was not kept in the daily routine of business, but only for the purpose of showing the month-end totals or balances to serve as the basis for the monthly trial balance, and the totals therein entered by Potwin were a part of his monthly audit service. Each month Potwin entered a trial balance in the trial-balance book, the figures being taken from the pretended totals at the foot of each page of the pay-roll record and check register. At the end of each year he made an annual audit, with a profit-and-loss statement showing the pretended figures of the company's operations for the year. He also prepared the income tax returns for the company. It seems from the evidence that Potwin performed a service which did require the audit of financial transactions, and that this is sufficiently supported by the testimony of A. C. Jaeger—"I would write out the payroll checks for the employees listed in the payroll and Potwin would check my figures and total them and see that there was no mistake." These totals Potwin "juggled" in connection with his forgery operations and their concealment.

The trial balance made by Potwin at the end of each month was based supposedly upon the totals made by him of the financial transactions recorded by others. The audit at the end of the year (except as it served to conceal his wrong-doings) was based upon the totals of financial transactions recorded by others. Only a part of each annual audit deals with records with which Potwin had any prior connection. He apparently had nothing to do with the figures showing merchandise inventories and other physical assets, bills receivable, officers' open accounts, fixed asset sales, and other income, and various other items, all of which he set up in the annual audit from records and figures made by others.

There was evidence to support the court in its finding that the duties performed by Potwin were those of a public accountant. The dividing line between the two forms of work

cannot be defined. Every accountant must do some form of work that is also done by bookkeepers, and every bookkeeper must perform acts of accounting. But the court held, and we think properly, that the loss occurred through the failure of Potwin properly to perform the duties of a certified public accountant.

II. It is claimed that the bond under consideration is an official bond and as to limitation is governed by section 11007, Code, 1931 (same section Codes, 1935, 1939), subdivision 4 of which provides that action must be brought within three years. This question was raised in the district court in defendant's motion for finding and judgment in his favor, which set out that the cause of action in plaintiff's petition is alleged to have accrued during the period from November 1, 1931, to May 15, 1933, and action herein was not commenced until October, 1938.

Defendant argues that the gist of this action is for breach of official duty, and therefore the action would necessarily have to be brought within three years (see Codes, 1931, 1935, 1939, section 11007; State v. Dyer, 17 Iowa 223), and that the action would accrue at the time of the breach of the official statutory duty. Polk County v. Roe, 164 Iowa 302, 145 N. W. 868; Baie v. Rook, 223 Iowa 845, 273 N. W. 902; Keokuk County v. Howard, 41 Iowa 11; Lougee v. Reed, 133 Iowa 48, 110 N. W. 165; Norton v. Title Guar. & Sur. Co., 176 Cal. 212, 168 P. 16. Therefore, any liability under the bond of the defendant must be for the breach of official duties. We cannot, however, hold that this is an official bond under the contemplation of the law. The accountant's certificate is not an appointment to a public office, it is merely a license to practice accountancy, such as is required for the practice of law. Yet a lawyer is not a public officer, although he is an officer of the court. The right to practice law is a privilege. See In re Disbarment of Cloud, 217 Iowa 3, 250 N. W. 160.

"A public officer, as distinguished from an employee, must be invested by law with a portion of the sovereignty of the state and authorized to exercise functions either of an executive, legislative or judicial character." State ex rel. Newman v. Skinner, 128 Ohio St. 325, 191 N. E. 127, 93 A. L. R. 331, and

annotations. See also, State ex rel. Barney v. Hawkins, 79 Mont. 506, 257 P. 411, 53 A. L. R. 583, and annotations, holding that the general rule is that the duties cast upon the incumbent must involve an exercise of some portion of the sovereign power, and whose performance concerns the public, and that a position which lacks one or more of these elements is a public employment. Potwin could exercise no powers of the sovereign. The requirement that he take oath and give bond is not here controlling. The bond is in some respects similar to the bonds of public officers. Jaeger Mfg. Co. v. Massachusetts Bonding & Ins. Co., 229 Iowa 158, 163, 294 N. W. 268, 271. The word ''office'' has two meanings, one popular, the other legal and technical, as the office of executor, guardian, etc. The legal meaning always implies a charge, or trust, conferred by public authority, and for a public purpose. See In re Estate of McIntosh, 182 Iowa 23, 159 N.W. 223. In 10 Am. Jur. 518, section 3, the text refers to the power to grant and revoke a license to practice the profession of certified public accountancy, and cites Lehmann v. State Board of Public Accountancy, 263 U. S. 394, 398, 44 S. Ct. 128, 130, 68 L. Ed. 354. In discussing the revocation of a license permitting one to hold himself out as a certified public accountant, the court, in that case, said:

''This Court and other courts have decided that a license or certificate may be required of a physician, surgeon, dentist, lawyer or schoolteacher.''

The question of the statute of limitations, raised by defendant, we do not think applies here. We have already stated that Potwin was not a public officer. If he was not a public officer, subdivision 4 of Code section 11007 would not apply.

Nor need we consider the question of reasonable diligence to discover the fraud. Whether or not this was a question to be determined by the court as a trier of fact, its only bearing upon the case would be on the question of limitation, and this we think, under our holding, is immaterial.

Other matters are argued or referred to, but we think the matters above-mentioned are determinative of the case.

In accordance with our conclusions as to the defenses herein discussed, we are compelled to hold that the motion of defend-

ant for judgment was rightly overruled, and that the district court was correct in its conclusions. The case is, therefore, affirmed.—Affirmed.

STIGER, BLISS, OLIVER, and GARFIELD, JJ., concur.

WENNERSTRUM and SAGER, JJ., dissent.

MILLER, C. J., takes no part.