In the Matter of the Application of JENNY WORMSEN and Another, Petitioners, for an Order against PAUL MOSS, as Commissioner of Licenses of the City of New York, Respondent.

Supreme Court, Special Term, New York County, August 26, 1941.

*Joseph Richter*, for the petitioners.

*William C. Chanler, Corporation Counsel [Charles Weinstein* and *Raymond J. Horowitz* of counsel], for the respondent.

BERNSTEIN, J. This is an application by Jenny Wormser and Dagmar Larsen-Bak, pursuant to article 78 of the Civil Practice Act, for an order directing the commissioner of licenses of the city of New York to accept their applications for licenses to act as massage operators and to permit them to take the prescribed examination for such licenses according to the regulations applicable thereto. It is based upon two petitions which allege that the petitioners in November, 1940, filed applications for the licenses on printed forms furnished by the commissioner, that the applications were accompanied by certificates of freedom from communicable disease on printed forms furnished by the department of health, and that they complied with all provisions of law and with all rules and regulations relating to such applications; that the petitioners were graduates of the Swedish Institute for the study and practice of massage and qualified by education and training for the work of massage operators; and that on March 21, 1941, their applications were denied upon the sole ground that they had not been citizens of the United States for at least two years, as required by an amendment to the Administrative Code of the City of New York, effected by Local Law No. 15 of the Local Laws of New

York City of 1941, adopted March 7, 1941. It appears from the petition that the petitioner Wormsen, a native of Norway, has resided in New York city since 1928, and acquired citizenship on February 25, 1941, and that the petitioner Larsen-Bak, a native of Denmark, has resided in New York State since 1934, was examined for admission to citizenship on May 21, 1941, and is now awaiting her final papers. None of those allegations is contradicted.

At the time of the filing of the applications, section 773a–1.0 of the Administrative Code was applicable to licenses to act as massage operators. It provided: " No person shall be licensed, nor shall any existing license of any person be renewed, under any provision of the code, except if the applicant is a citizen of the United States, or has regularly declared his intention of becoming a citizen." Before the applications were acted upon, the city council enacted Local Law No. 15 of the New York City Local Laws of 1941. It amended section B32–195.0 of the Administrative Code by providing: " d. Notwithstanding the provisions of section 773a-1.0 of this code, licenses under this article shall be issued only to persons who are citizens of the United States for a period of not less than two years." The petitioners assail the local law as an arbitrary, unreasonable and discriminatory exercise of the police power, and violative of the " due process " and " equal protection " clauses of the Constitution of the United States (Fourteenth Amendt. § 1) and of the Constitution of the State of New York (Art. I, §§ 6, 11).

The petitioner Larsen-Bak separately urges, in addition, that the local law is void and of no effect as to her because it violates the " General convention of friendship, commerce and navigation between the United States of America and his Majesty the King of Denmark " (8 U. S. Stat. at Large, pp. 340–343), proclaimed on October 14, 1826, and still in force. That treaty provides that " the citizens and subjects of each may  *  *  *  reside and trade there in all kinds of produce, manufactures, and merchandise; and they shall enjoy all the rights, privileges and exemptions, in navigation and commerce, which native citizens or subjects do, or shall enjoy, submitting themselves to the laws, decrees, and usages, there established, to which native citizens or subjects are subjected."

In so far as one is deprived of the right to labor, his liberty is restricted, his capacity to earn wages and acquire property is lessened, and he is denied the protection which the law affords those who are permitted to work. (Smith v. Texas, 233 U. S. 630,

636.) That broad affirmation of our respect for the free right to labor is subject to the qualification that the right may be interfered with by the State, in the exercise of its general police power, in the interests of the health, morals, safety or welfare of the community. Such action of the State must, however, be reasonable, bear a just and reasonable relation to the promotion of the general welfare, and avoid arbitrary discrimination between persons. A statute enacted in the exercise of the police power must have been passed to prevent some manifest evil or to preserve public health, morals, safety or welfare. The test is always whether the regulation is reasonable within those limits (*Smith* v. *Texas, supra; Burns Baking Co.* v. *Bryan*, 264 U. S. 504; *People* v. *Crane*, 214 N. Y. 154; affd., 239 U. S. 195; *Ives* v. *South Buffalo R. Co.*, 201 N. Y. 271; *Cowan* v. *City of Buffalo*, 247 App. Div. 591.) If it discloses no such purpose, but is clearly calculated to invade the liberty and property of the individual, it is plainly the duty of the courts to declare it invalid, for as the Court of Appeals said in the *Ives* case: " Legislative assumption of the right to direct the channel into which the private energies of the citizen may flow, or legislative attempt to abridge or hamper the right of the citizen to pursue, unmolested and without unreasonable regulation, any lawful calling or avocation which he may choose, has always been condemned under our form of government " (p. 301).

The proceedings of the city council are barren of any facts to sustain the recommendations of its committee on general welfare that the proposed legislation is in the interest of the public, its health, safety and morals. The record shows that the committee held no hearings on the bill and received no evidence upon its merits. Its mere statement, therefore, that it is in the interests of the public health and morals, does not preclude the courts from scrutinizing the act and determining whether it really relates to and is appropriate for the promotion of the public welfare. (*Matter of Jacobs*, 98 N. Y. 98, 110, 112.) " A law enacted in the exercise of the police power must in fact be a police law." On this application, it is true, the commissioner contends that abuses have grown up amongst those who practice the profession, that their contact with the human body exposes those whom they treat to potential risks to their health and morals, that many undesirable persons have infiltrated the profession, and that in a period of two years there were twenty arrests of owners and operators of massage parlors, licensed and unlicensed, who were charged with violation of section 887 of the Code of Criminal Procedure or section 1146 of the Penal Law. But he also points out that the calling in itself

is useful and not immoral, and that most of the persons engaged in it are honest and honorable, so that his contention resolves itself into an argument for licensing and a grant of wide discretion in the awarding of licenses. That issue is not involved here, for the applications are not to compel the commissioner to issue licenses, which the petitioners concede that he has a right to refuse, but to compel him to accept their applications and permit them to take the qualifying examinations.

We are thus brought to inquire as to what reasonable relation the statute enacted by the local legislature bears to the promotion of the general welfare. What connection is there between the object sought to be accomplished, be it the health or morals of the public or its general welfare, and the means prescribed by the statute to accomplish that end, viz., that the licensees shall have been citizens for a period of not less than two years? Clearly, none at all. Two years' citizenship, or in fact any citizenship, is not of itself a reasonable yardstick to determine whether one is fit to prosecute the profession of massage operator. It is not a reasonable assurance that the operator is healty or moral or decent or loyal to the public he is called upon to serve And since the enactment bears no relation to the general welfare, it is arbitrary, discriminatory and calculated to invade the liberty and property of the persons affected in violation of their constitutional rights. (*People* v. *Ringe*, 197 N. Y. 143; *People* v. *Kuc*, 272 id. 72; *Matter of Magnani* v. *Harnett*, 257 App. Div. 487; affd., 282 N. Y. 619.)

In that respect this case does not differ from *Magnani* v. *Harnett* (*supra*) in which subdivision 1-a of section 20 of the Vehicle and Traffic Law, which prohibited the issuance of a chauffeur's license to any person who was not an American citizen or had not filed his intention to become a citizen within six years of the date of his application, was held unconstitutional. Since the operation of a dangerous vehicle on the public highway has more relation to the public welfare than the work of a massage operator, it is quite evident that that case furnishes ample authority for a kindred holding here. This legislation, moreover, suffers from the added vice of attempting to draw a distinction as between citizens themselves. Thus, it is clearly unreasonable and arbitrary to apply a test of qualification for a private calling on the basis that one has been a citizen for two years and another for but a year and eleven months. Such a test is a discriminatory one in that, as Judge CARDOZO said, it " create[s] a privileged caste among the members of the state." (*People* v. *Crane, supra*, 167.)

The Fourteenth Amendment to the Constitution is not confined to the protection of citizens. It applies to all persons within

the territorial jurisdiction, without regard to differences of race, creed, color and nationality. (*Yick Wo* v. *Hopkins*, 118 U. S. 356, 369.) Thus the alien, like the citizen, has the right to engage in a lawful occupation. If the calling is one that the State, in the exercise of its police power, may prohibit either absolutely or conditionally, by the exaction of a license, the fact of alienage may justify a denial of the privilege. But even then, there must be some relation between the exclusion of the alien and the protection of the public welfare. (*People* v. *Crane, supra,* 169.) Classification as between citizens and aliens is permissible, but the classification must have some reasonable basis in the welfare of the community. (*Miller* v. *City of Niagara Falls,* 207 App. Div. 798; *Magnani* v. *Harnett, supra.*) Thus, in a case involving a State statute which restricted licenses for barbers to citizens of the United States, the court said: " In the present case the relator's business is in no way injurious to the morals, the health, or even the convenience of the community, provided only he has the requisite knowledge upon the subjects prescribed by the Legislature to practice his calling without endangering the health of his patrons. To hold that he is not entitled to practice this calling because not a full citizen of the United States is to deny to him rights which we think are preserved by the Fourteenth Amendment." (*Templar* v. *State Board of Examiners of Barbers,* 131 Mich. 254, 258; 90 N. W. 1058.) The reasoning of that case is peculiarly applicable to that of the petitioner Larsen-Bak. Moreover, clear evidence of the fact that there is no relation here between the exclusion of an alien and the public welfare, is to be found in the recent enactment by the city council. (New York City Local Laws of 1941, No. 52, effective June 30, 1941.) That law lifted the restriction of the so-called Lyons Residence Law for a limited time so as to permit the employment of alien declarant doctors, internes and nurses in city hospitals. If the public interest furnishes no reason for their exclusion from public service it cannot furnish such a reason for the exclusion of a declarant massage operator who seeks to pursue a private calling.

In view of the court's holding that the statute in question is unconstitutional as to both petitioners, it deems it unnecessary to consider the question of whether or not it also violates the treaty provisions referred to. Application granted. Settle order.