98 So.2d 323 (1957)
FLORIDA ACCOUNTANTS ASSOCIATION, a non-profit Florida corporation, Howard Curry, John H. Barclay, Jr., A.E. Roache, Joseph Fiorella and Aldor Dragon, Appellants,
v.
George W. DANDELAKE, P.W. Fisher, Charles C. Colley, Jr., Robert M. Morgan, and H.M. Turnburke, as members of and constituting the State Board of Accountancy of the State of Florida, Appellees.
Supreme Court of Florida, En Banc.
May 31, 1957.
Rehearing Denied December 9, 1957.
Jepeway & Dauber and Redfearn & Ferrell, Miami, for appellants.
Ward & Ward, Miami, for appellees.
*324 ROBERTS, Justice.
This suit was brought by the appellees, as members of the State Board of Accountancy (the "State Board" hereafter), to enjoin certain actions on the part of the officers and members of the appellant Florida Accountants Association, which were alleged to be in violation of Ch. 473, Fla. Stat. 1955, F.S.A., regulating the practice of public accounting. They alleged, among others, that the defendant corporation and its members were invading the field restricted to certified public accountants and public accountants by the statute and were holding themselves out as accountants contrary to the intent of Ch. 473, supra. The defendants denied that they were violating Ch. 473 by the actions complained of and alleged that, if their actions should be so construed, then the statute is unconstitutional as an unlawful restriction of the right of contract guaranteed by the Florida Constitution and an unwarranted exercise of the police power in that it favors one group of citizens at the expense of another without serving the general welfare. They also attacked the validity of certain rules adopted by the State Board.
Opining that he could not see how a person seeking the services of a certified public accountant could be misled into another category of accountants, the Chancellor nevertheless found that "the defendant nonprofit corporation and its members use the word `accountant' in such a manner that it would lead one to believe they practice the profession of `accountancy'", and that this is prohibited by Sec. 473.02 of the Act, defining "public accounting", the practice of which is limited to those persons who hold certificates from the State Board as "certified public accountants" and "public accountants" under the Act. Sec. 473.25. He declined to declare the statute unconstitutional under the doctrine of stare decisis and the decision of this court in Heller v. Abess, 1938, 134 Fla. 610, 184 So. 122. By his decree he enjoined the defendant corporation and its members as a class (1) from holding themselves out as accountants authorized to practice as a separate and independent profession without specifying in their letters, their cards and their advertising that they offer only bookkeeping service, and (2) from using the word "accountant" directly or indirectly in their published literature or representations to the public, either oral or written, or in signs on their offices or stationery. The defendants have appealed.
As noted, under Sec. 473.25 of the Act only those persons holding certificates of authority from the State Board as "certified public accountants" or "public accountants" are authorized to engage in the practice of public accounting in this state. With some exceptions not here pertinent, certified public accountants obtain their certificates as a result of an examination given by the State Board. The designation "public accountant" refers to those persons who in 1927 were engaged in public accounting in this state, either in their own or another's accounting office, and were issued a certificate of authority to practice as a "public accountant" prior to December 31, 1927. Ch. 12290, Acts of 1927. As of 1955, only twenty-eight "public accountants" remained in practice in this state.
The definition of "engaging in the practice of public accounting" contained in Sec. 473.02 is very broad and includes, among others, any person who holds himself out to the public as skilled in the knowledge, science and practice of accounting, or "who maintains an office for the transaction of business as a public accountant, or who, except as an employee of a public accountant, practices accounting, as distinguished from bookkeeping for more than one employer." A rule adopted by the State Board provides that "The offering of his services as an independent contractor; the maintenance of an office for performance of work as distinguished from keeping of books and records at the place of business of the employer; the listing of one's name in the telephone and business directories as an accountant; *325 the employment of others as assistants; all are facts tending to show that an individual is engaged in the practice of public accounting as distinguished from serving as a part-time bookkeeper for one or more employers."
In support of their contention that the statute and rule are unconstitutional, the defendants point out that the 1955 annual register of the State Board shows that there are only 723 certified public accountants and 28 public accountants who reside in the State of Florida; that 310 of these reside in Dade County; that 390 reside in the counties of Duval, Hillsborough, Orange, Pinellas, Palm Beach, Leon, Broward, Polk, Escambia, Alachua, and Volusia  in other words, that all except 51 of the authorized CPA's and "public accountants" resided in twelve counties of this state. The remaining 51 persons resided in nineteen other counties, so that (as of June 30, 1955) thirty-six counties of this state, with a population of 394, 299, had no CPA or "public accountant" residing therein. The defendants contend that the statute has, in effect, created a monopoly in favor of one class of persons and deprived another class of an opportunity of earning a livelihood at their chosen profession and has resulted in great inconvenience and added expense to the general public, rather than subserved the public welfare. They ask this court to reappraise its decision in Heller v. Abess, supra, 184 So. 122, 123, in the light of the developments during the past nineteen years, and hold that Ch. 473 is unconstitutional and invalid insofar as it deprives "noncertified accountants" of the right to do ordinary accounting and bookkeeping work for their clients and to designate themselves as "accountants", as distinguished from "certified public accountants" or "public accountants" in so doing.
We have examined the original record in Heller v. Abess, supra, and find that the defendant in that case was holding himself out to the public as a "Public Accountant" and practicing as a "Public Accountant". The lower court enjoined him from so doing "unless and until he has received and holds a certificate of authority from the State Board of Accountancy of the State of Florida." In affirming the lower court as against the attack upon its validity made by the defendant, this court said that
"The statute is not, as contended, an arbitrary, unreasonable and oppressive exercise of the sovereign legislative power in forbidding the use by others of the business or professional title given under the statute only to those who duly qualify and pay a licensed tax to engage in the business occupation or profession of public accountant as regulated by the statute; such provisions being reasonable and appropriate to prevent imposition upon the public and to serve the general welfare." (Italics supplied.)
Noteworthy is the fact that immediately preceding this statement the reader's attention was directed to section 6115 (4174), C.G.L., F.S.A. § 652.24. This section prohibited all banks not organized and transacting business under the laws of this State, and all persons or corporations doing the business of bankers, brokers or savings institutions "from using or continuing to use the word `bank' or any other title which may imply that it is an incorporated banking institution * * * except that individuals or firms who may be carrying on the business of banking may continue the use of such name or title, provided they append to such name or title wherever used the words `not incorporated,' * * *"
In the light of the specific wording of the court's decision, italicized in the quotation above, and the reference to the above-quoted statute relating to the use of the word "bank", we think it may fairly be concluded that this court intended only to uphold the validity of the statute insofar as it prohibited accountants from using the designations "certified public accountants" or "public accountants", and that it did not reach the *326 question of whether a non-certified accountant could reasonably be prohibited from working at the business or occupation of accountancy, so long as he did not hold himself out as a CPA or "public accountant". Our conclusion in this respect is reinforced by the fact that in his appeal brief, the defendant in the Heller case quoted from the decision in Frazer v. Shelton, 1926, 320 Ill. 253, 150 N.E. 696, 702, 43 A.L.R. 1086, holding unconstitutional an Illinois statute, Laws 1925, p. 505, prohibiting the practice of accounting for more than one person by any except "public accountants" or "certified public accountants", but containing the following statement:
"We do not say that it is beyond the power of the General Assembly to enact a statute requiring that no one shall use the term `certified public accountant' or the term `public accountant' without having met the requirements of such an act. Such a provision may well be within the power of the Legislature on the ground that it is to the public interest that no one shall use a term indicating that he has been examined and certified as an accountant when such is not the fact. * * * Such is a misrepresentation which the Legislature may prevent by statute."
Also pertinent here is the comment by the late Mr. Justice Brown in a case decided two years prior to the Heller case, State ex rel. Fulton v. Ives, 1936, 123 Fla. 401, 167 So. 394, 405, that in deciding cases involving the exercise of the police power "[i]t is important * * * that the court go no further than is absolutely necessary in each particular case." In the Heller case, it was necessary to decide only that the business or profession of accountancy was charged with a public interest sufficient to justify the Legislature's providing for the registration of accountants and prohibiting unregistered (noncertified) accountants from using "the business or professional title given under the statute only to those who duly qualify" under the statute. And, in our opinion, this is all that the court intended to hold in the Heller case.
In the instant case, the defendants do not claim a constitutional right to use the designations "certified public accountant" or "public accountant". They simply want to do ordinary accounting work without, as they put it, being relegated to the position of "enslaved laborers" in the offices of certified public accountants and contend that they have a constitutional right to do so. We think there is merit to their contention.
It is common knowledge that, since 1938, the state and national governments have enacted an increasing number of regulatory measures that are most burdensome to the average businessman in the routine operation of a small business. This situation has created a demand for a clerical employee who is not necessarily a certified public accountant but who can render ordinary accounting service to these small businessmen by preparing the numerous forms and otherwise assisting them in completing the paper work now made essential by the myriad regulatory measures referred to above. In most cases a small businessman would find it unnecessary and, indeed, not economically feasible to employ such a clerical employee on a full-time basis, and it has become routine practice for a number of small businesses to share the time of one such non-certified accountant. The State Board would have us hold that such assistance may be rendered only as an "employee" of the business and in the employer's office, rather than in that of the accountant, and that such services must be styled "bookkeeping" rather than accounting. But what is the dividing line between bookkeeping and accounting? Every accountant must do some form of work that is also done by bookkeepers, and every *327 bookkeeper must perform acts of accounting. Cf. Jaeger Mfg. Co. v. Maryland Casualty Co., 1941, 231 Iowa 151, 300 N.W. 680, 683.
This court takes judicial notice of the public records of this state; and these records reveal that over 100,000 business and professional occupational licenses were issued in this state in the last fiscal year, including over 42,000 retail store licenses. Over 2,000,000 Federal tax returns were filed in this state last year, including over 26,000 corporation income tax returns. Yet, Sec. 473.02 provides that any person who prepares, signs or certifies for clients "reports of audits, balance sheets and other financial, accounting and related schedules, exhibits, statements, or reports which * * * are to be filed with a * * * governmental agency, or used for any other purpose" shall be "deemed to be engaged in practice of public accounting", although the regulations of the Treasury Department do not prohibit persons other than certified public accountants from assisting in the preparation of or signing another's income tax return. Since there are only 751 certified public accountants or public accountants in this state, it is obvious that the demand for routine accounting service far exceeds the supply. Thus it appears to us that there is a valid field of operation for a non-certified accountant who is not sufficiently expert in all phases of accountancy to qualify as a certified public accountant but who is entirely capable of dealing with routine accounting matters, which, as noted, is all that most small businesses need or desire. And so long as the businessman is under no misapprehension as to the type of services for which he has contracted  that of a non-certified accountant, rather than a CPA  it would seem to serve no useful purpose to hold that such work must be performed in an "employer's" office by one who must style himself a "part-time bookkeeper for one or more employers".
Nor can we overlook the fundamental right of all citizens to enter into contracts of personal employment. "Included in the right of personal liberty and the right to private property is the right to make contracts for the acquisition of property. Chief among such contracts is that of personal employment by which labor and other services are exchanged for money or other forms of property. If that right be stricken down or arbitrarily interfered with, there is a substantial impairment of liberty in the long-established constitutional sense." State ex rel. Fulton v. Ives, supra, 167 So. 394. The public policy of this state as to this fundamental right has been further expressed in the so-called "Right to Work" Amendment to our constitution. Sec. 12, Declaration of Rights, F.S.A. An individual cannot even contract away this right, if the contract is by an equity court deemed to be unfair and unreasonable as between the parties thereto. See Love v. Miami Laundry Co., 1934, 118 Fla. 137, 160 So. 32.
When the needs of small business, referred to above, are superimposed upon the fundamental right of all citizens to enter into contracts of personal employment and these two factors are weighed against the right of the state, in the exercise of its police power, to regulate the practice of accountancy in the manner here attempted, there can be no doubt as to the direction in which the scales of Justice will swing.
We have heretofore stated our interpretation of this court's decision in Heller v. Abess; but, whatever its interpretation, the developments during the nineteen years since it was rendered have put an entirely new face on the matter. Pertinent to the situation now existing, as disclosed by this record, is the language of the court in State ex rel. Short v. Riedell, 1924, 109 Okla. 35, 233 P. 684, 691, 42 A.L.R. 765, in which the Oklahoma Supreme Court held unconstitutional the Oklahoma accountancy statute, Laws 1917, c. 5, insofar *328 as it prohibited the practice of accounting by non-certified accountants. The court said:
"The effect of the act is that in a growing, expanding, and lucrative field of usefulness of accountants, power is given a board in which accountants have control, to restrict their number, and tends toward a monopoly. It deprives those desiring an audit the right of contract in matters purely of private concern, and deprives accountants not certified of the enjoyment of the gains of their own industry guaranteed to them by the Bill of Rights, in that it denies to them the right to follow the occupation for which they have qualified themselves by the expenditure of time and toil."
Similar provisions of accountancy acts were held unconstitutional in Frazier v. Shelton, 320 Ill. 253, 150 N.E. 696, 43 A.L.R. 1086, and Campbell v. McIntyre, 165 Tenn. 47, 52 S.W.2d 162. See also Moore v. Grillis, 1949, 205 Miss. 865, 39 So.2d 505, 10 A.L.R.2d 1425, holding unconstitutional an amendment to their accountancy statute, Code 1942, § 8905 et seq. (which does not prohibit the practice of accounting by a non-certified accountant) providing that only an attorney or a certified public accountant could prepare a tax return for compensation.
The State Board here relies on Wangerin v. Wisconsin State Board of Accountancy, 1936, 223 Wis. 179, 270 N.W. 57, 59, in which the Wisconsin accounting statute, St. 1935, § 135.01 et seq., which is very similar to the Florida statute, was attacked on the ground that "the practice of accounting is not subject to regulation by the state because accountancy does not affect the public welfare, and the act is therefore an unlawful and arbitrary exercise of the police power which infringes the freedom of contract." The attack was made by persons who were entitled to be certified as "public accountants" under a "grandfather clause" similar to the provision of the Florida statute establishing the professional title of "public accountant", but who complained that the Act relegated them to what they considered an inferior status  that of "public accountant"  unless they took the examination and qualified as "certified public accountants." Clearly, the constitutional question there presented was entirely different from that with which we are here concerned, although in holding that the plaintiffs "cannot complain because they are not given a status to which their qualifications do not entitle them" and declining to overrule the lower court's order dismissing their suit for an injunction, the Wisconsin court used language indicating that the statute would be held valid even as applied to a non-certified accountant.
Aside from what must be considered the dictum in the Wangerin case, we have found no decision by the court of any other state  and none has been cited  holding that a state may lawfully prohibit a non-certified accountant from engaging in the practice of accounting; and because of the situation presently existing in this state, heretofore discussed, we would not be inclined to follow it.
We agree with the Oklahoma court that to prohibit non-certified accountants in this state from doing routine accounting work in their own offices, rather than in that of an "employer", and to require them to designate themselves as "bookkeepers" rather than as accountants, "is in conflict with the spirit and express provision of the Constitution and void, in this, that it abridges the right of private property and infringes upon the right of contract in matters purely of private concern bearing no perceptible relation to the general or public welfare, and thereby tends to create a monopoly in the profession of accountancy for the benefit of certified accountants, and denies to uncertified accountants the equal protection of *329 the laws and the enjoyment of the gains of their own industry." State ex rel. Short v. Riedell, supra, 233 P. 684.
So long as the defendants do not use the statutory title of "certified public accountant" or "public accountant" or any other designation that might mislead the public into believing that they hold a certificate from the State Board  for example, "licensed accountant," "registered accountant," "certified accountant", "enrolled accountant" might create such a false impression  we think they have a right to work at their chosen profession and to call themselves "accountants" rather than "bookkeepers." Although the lower court did not reach this point, since it was unnecessary, it might be noted that a letterhead, card or advertisement indicating that a person is a member of the defendant "Florida Accountants Association" might tend to mislead the public, so that the State Board could reasonably require that such statement be followed by a notation "not certified by the State Board of Accountancy" or similar words.
And so it is that any attempt to enforce Ch. 473, supra, in a manner inconsistent with the opinions herein expressed would be unreasonable and in violation of our organic law.
Accordingly, the decree appealed from is reversed, and the cause remanded to the lower court for a re-evaluation of the evidence in the light of the opinions herein expressed and the entry of a decree not inconsistent therewith.
TERRELL, C.J., and THOMAS, THORNAL and O'CONNELL, JJ., concur.
HOBSON and DREW, JJ., dissent.
HOBSON, Justice (dissenting).
I agree to the views expressed by Mr. Justice ROBERTS but I feel that this opinion invades the legislative field.