170 So.2d 33 (1964)
Hugh Miller MERCER et al., individually and as partners doing business under the firm name of Price Waterhouse & Co., and Jim Walter Corporation, a Florida Corporation, Appellants,
v.
Arthur I. HEMMINGS et al., as members of and constituting the Florida Board of Accountancy, Appellees.
No. 32967.
Supreme Court of Florida.
July 29, 1964.
Rehearing Denied January 11, 1965.
*34 Cromwell A. Anderson, Louis S. Bonsteel, and Smathers & Thompson, Miami, for appellants.
Chester Bedell, Jacksonville, for appellees.
ROBERTS, Justice.
This case is before us on direct appeal from a final decree upholding the validity of Chapter 473, Florida Statutes, F.S.A. relating to the practice of public accounting in this state, and Rule 20-9.03 promulgated by the Florida State Board of Accountancy ("the Board" hereafter), as against the attack on constitutional grounds made thereon by the appellants. Jurisdiction of the appeal attaches under Section 4(2) of Article V of the Florida Constitution, F.S.A.
The decree was entered in a suit for declaratory relief brought by the appellants, as partners doing business under the firm name of Price Waterhouse & Co., and their client Jim Walter Corporation, a Florida corporation doing business in several other states. The partnership is composed of some 130 certified public accountants, each of whom is authorized to practice as a certified public accountant in one or more states of the United States. None of them, however, holds such a certificate in this state, nor do any of them reside in this state.
*35 The firm, which is one of the oldest and largest in this country, has performed accounting work in Florida since 1906. Since 1931, however (the year in which our statute providing for the examination and licensing of "certified public accountants" was adopted, Ch. 15637, Laws of Florida, Acts of 1931) its accounting work here has been limited to the fulfilling of specific engagements entered into outside the state, under 90-day temporary certificates issued by the Board as authorized by Section 473.14, Fla. Stat., F.S.A. From a modest thirteen in 1948, the number of such temporary certificates issued annually to the firm had increased to 69 issued in 1960. In that year an office (referred to by appellants as a "work space") was established in Miami, with a manager and several assistants  all licensed by other states as certified public accountants  who with their families took up residence in Florida and devoted full time to the firm's accounting business for Florida clients. In 1961, 88 specific engagements, requiring the same number of temporary certificates, were undertaken in this state; and in January of 1962 an additional "work space" was established in Tampa.
In establishing such "work spaces", the appellants carefully avoided giving the appearance of holding themselves out to the general public in this state as being licensed under Florida law to practice as Florida certified public accountants. Their firm name was not placed on their office door nor in the building directory, nor was it listed in the telephone directory. The resident employees were not listed in any directories as certified public accountants nor (except in one unauthorized instance) as employees of Price Waterhouse. The letterheads of the Tampa and Miami offices show only a post office box number, and the telephone was answered by repeating part of the telephone number. Despite their attempt at anonymity, however, their "specific engagements" in this state increased to 134 during 1962 (including some that were acquired through their local Miami attorneys), requiring two managers at each of the offices and additional assistants (ten in the Miami office alone, all of whom were out-of-state certified public accountants) who resided in the local area and worked full-time for the appellants in the area.
The situation apparently first became known to the Board in July of 1962 when one of the managers of the Miami office applied to the Board for a reciprocal certificate to practice as a certified public accountant in this state, as authorized by Section 473.19, Fla. Stat., F.S.A. One of the requirements for the issuance of such a reciprocal certificate is that the applicant "has been engaged in the practice of public accountancy in Florida as a full time employee of a certified public accountant, as defined in this chapter, for a period of two years, and is a resident, having resided continuously in the state for a period of two years * * *" The applicant stated in this application that he had been so engaged for the requisite period, having been employed by the appellants, Price Waterhouse. The Board denied his application and immediately adopted Rule 20-9.03 as an "emergency" measure without notice to the appellants.
The portion of the rule objected to by appellants reads as follows:
"(3) The Board shall ascertain that the engagement for which an application is made is a specific engagement for which a temporary certificate may be issued, and does not constitute, and is not in conjunction with other engagements for the purpose of establishing, a full time practice of public accounting in the State of Florida. Temporary certificates will not be issued to firms or persons maintaining a full time staff in the State of Florida, and using facilities for full time practice of public accounting as distinguished from fulfilling specific engagements under temporary certificates." (Emphasis added.)
The statutory provision relating specifically to the issuance of temporary certificates *36 to out-of-state certified public accountants, Section 473.14, F.S.A. provides that
"The board may, in its discretion, adopt rules and regulations providing for the issuance of temporary certificates to persons for the purpose of enabling such persons to fulfill specific engagements or employments, the contracts for which were entered into beyond the limits of the State of Florida.
"No such temporary certificate shall be valid for more than ninety days after its issuance, and no certificate shall cover more than one engagement, and no such certificate shall be issued to any firm or copartnership unless all of the members thereof hold certificates as certified public accountants issued under the laws of another state * * *."
The instant suit for declaratory and injunctive relief was then filed by the appellants. The Board answered and filed a counterclaim praying that the court enjoin the appellants from practicing as certified public accountants in this state except under certificates as may be issued by the Board.
Trial was had of the issues made, and extensive depositions and numerous exhibits in support thereof were introduced in evidence, upon the basis of which the Chancellor held, inter alia, that the provisions of Chapter 473 requiring out-of-state certified public accountants to obtain certificates from the Board as a condition precedent to practicing in this state, are within the police power of the State and are not susceptible to the attack on constitutional grounds made upon them by the appellants; that the residency requirements of Chapter 473 for permanent certificates by examination and reciprocity "do not discriminate in favor of residents and against non-residents and are not invalid upon the grounds or for any of the reasons asserted by the plaintiffs"; and that Rule 20-9.03, supra, "is in keeping with the intent of Chapter 473" and not invalid on the grounds or for any of the reasons advanced by the appellants. The relief prayed for by the appellants was denied and that counterclaimed for by the Board was granted. This direct appeal followed.
On this appeal the appellants argue that Rule 20-9.03 is inconsistent with the mandate of this court in Florida Accountants Association v. Dandelake, Fla. 1957, 98 So.2d 323, 70 A.L.R.2d 425; that it is repugnant to Section 473.14, supra; and that it is without basis in the Florida police power. Their attack on constitutional grounds  against the Rule and against Section 473.14 and Chapter 473, F.S.A. if the Rule is held to be in keeping therewith  is summarized in their brief as follows:
"It arbitrarily interferes with appellants' freedom of contract and rights of property in the practice of their profession and, therefore, is in violation of the Due Process Clause. It imposes an unjustifiable burden on interstate commerce and discriminates in favor of Florida Certified Public Accountants and Public Accountants at the expense of the interstate commerce in which appellants and their clients are engaged and, therefore, is in violation of the Commerce Clause. Finally, it discriminates irrationally between Florida Certified Public Accountants and nonresident Certified Public Accountants and, therefore, is in violation of the Equal Protection Clause."
In support of the contention that they cannot, consistently with Dandelake, be required to have Florida licenses as certified public accountants in order to maintain offices, staffed by full-time employees, in which to perform their accounting services, appellants argue that Chapter 473 as construed by this court in Dandelake is essentially a "holding out" statute, the purpose of which is "to protect the members of the Florida public from misrepresentation as to licensing by the state agency in the field of accountancy." They urge that they do *37 not hold themselves out to the general public in Florida as a firm of Florida certified public accountants, and therefore should not be required to comply with our certification requirements, any more than the accountants doing routine accounting work, involved in Dandelake, were required to do so.
This ingenious argument overlooks the fact that the appellants are, in fact, performing work as certified public accountants in Florida through employees residing and working full-time in this state. The fact that they do not advertise themselves as such to the general public in this state does not mean that they are not offering their services as such to a selected clientele  and one which, as noted above, is sufficient to require a large staff of full-time resident employees and "work spaces" in two of the largest cities of this state. Nor, apparently, were they adverse to accepting work acquired through Florida contacts, since the record shows that several new accounts were obtained through the firm's Miami attorneys.
We held in Dandelake that accountants doing routine accounting work who do not hold themselves out as certified public accountants, licensed or registered by the Board, could engage in their profession in this state. We also, in effect, affirmed the decision of this court in Heller v. Abess, 1938, 134 Fla. 610, 184 So. 122, that the business or profession of accountancy is charged with a public interest sufficient to justify legislation providing for the registration of accountants and prohibiting the practice of accountancy in this state as a certified public accountant without a certificate as such from the Board. We find nothing in Dandelake that is inconsistent with a requirement that a firm such as Price Waterhouse, which engages in the activities shown by this record to have been performed by it, should be subject to the same certification requirements in Florida as a Florida firm engaging in similar activities. Accordingly, the contention that Dandelake requires a different holding cannot be sustained.
Their contention that the Rule "is even repugnant to the very statute on which it is purportedly based", Section 473.14, is likewise without merit. Section 473.14 merely specifies the circumstances in which out-of-state certified public accountants may fulfill specific, and temporary, engagements, the contracts for which were entered into beyond the limits of the state. Clearly, there is nothing in this provision indicating an intention to accord to out-of-state certified public accountants the privilege of engaging on a year-round basis, through permanent offices staffed by full-time employees residing in this state, in the practice of accountancy, as certified public accountants, in this state. Accordingly, this contention cannot be sustained.
This brings us to the attack on constitutional grounds made against the Rule and the statute by the appellants. Their position is that, despite the fact that none of them holds a license to practice in Florida as a certified public accountant, "the plaintiff partners have had and now have the constitutional and legal right to continue to engage in the occupation and business of accountancy in the State of Florida and the constitutional and legal right to continue to render accounting services in this state to or for any and all corporations, firms and individuals by which or by whom they have been or shall be employed to render such services." (The quotation is from their complaint filed in this cause.) The constitutional basis for such contention was quoted above, and involves the due process, equal protection, and commerce clauses of the federal constitution.
The gist of their argument under the due process clause is that the Rule was obviously motivated not by valid police power considerations but by selfish private economic advantage, and for these reasons it "arbitrarily interferes with appellants' freedom of contract and abridges their *38 rights of property, and cannot stand under the Due Process Clause." The short answer to this is that the regulation of the practice of public accounting in this state, in its requirement for certification of those who engage in the practice as certified public accountants, has been upheld as a proper exercise of the police power. Heller v. Abess, supra, 184 So. 122; Florida Accountants Association v. Dandelake, supra, 98 So.2d 323. A great majority of the courts of other jurisdictions so hold. See the cases collected in the annotation in 70 A.L.R.2d 433.
It is well settled that, if otherwise valid, the motives of the adopters of a statute or rule are not relevant. An interesting comment on this principle of law was made by the U.S. Supreme Court in Goesaert v. Cleary, 1948, 335 U.S. 464, 69 S.Ct. 198, 93 L.Ed. 163, in upholding a Michigan statute prohibiting women from serving as bartenders and exempting from the legislative prohibition the wives and daughters of tavern owners. The court said:
"We cannot cross-examine either actually or argumentatively the mind of the Michigan legislators nor question their motives. Since the line they have drawn is not without a basis in reason, we cannot give ear to the suggestion that the real impulse behind this legislature was an unchivalrous desire of male bartenders to try to monopolize the calling."
In Heller v. Abess, supra, we noted that statutes regulating occupations and professions to conserve the public welfare may be declared to be a deprivation of property and contract rights without due process of law "only when the statute is arbitrary and unreasonable or oppressive as it adversely affects such life, liberty and property rights." Since, as noted, the provision of Chapter 473 in question was upheld by the court in that case, the appellants' contention under the due process clause cannot be sustained.
The main thrust of appellants' attack on the Rule and the statute is on commerce clause grounds, their contention being that the practice of accountancy, as engaged in by them, is in interstate commerce; that they have the constitutional and legal right to engage in the occupation and business of accountancy in this state in connection therewith; and that the prohibition against their activities in this state made by the Rule (and by the statute, if the Rule is in keeping therewith) directly burdens and discriminates against interstate commerce, contrary to Section 8, Article I, of the United States Constitution.
Insofar as the Rule and the statute have the effect of making it necessary for the appellants to obtain Florida certificates as a pre-requisite to continuing their full-time practice of accountancy in this state, the attack on commerce clause grounds cannot be sustained. It is now well settled that a state may require a license and a reasonable fee from out-of-state concerns doing business within its borders, as well as conformance with provisions designed to assure their integrity in dealing with its citizens, even though such concerns are engaged in interstate commerce. See Meyers v. Matthews, 270 Wis. 453, 71 N.W.2d 368, 54 A.L.R.2d 868; California v. Thompson, 313 U.S. 109, 61 S.Ct. 930, 85 L.Ed. 1219. Cf. McInerney v. Ervin, Fla. 1950, 46 So.2d 458, 461. As stated in Robertson v. California (1946) 328 U.S. 440, 458, 66 S.Ct. 1160, 1170, 90 L.Ed. 1366:
"But we are far beyond the time when, if ever, the word `license' per se was a condemnation of state regulation of interstate business done within the state's borders. * * * For the commerce clause is not a guarantee of the right to import into a state whatever one may please, absent a prohibition by Congress regardless of the effect of the importation upon the local community. That is true whether what is brought in consists of diseased cattle or fraudulen or unsound insurance."
*39 And it is settled in this state, as well as in other jurisdictions, that a state has a legitimate interest in regulating a highly skilled and technical profession such as public accountancy. This being so, the standards of proficiency which must be met in order to be registered and to practice in this state as a certified public accountant should, logically, be met by out-of-state persons or firms as well as by local persons and firms. To sustain the appellants' contention that out-of-state certified public accountants should be given laissez faire to perform unlimited engagements as certified public accountants in this state without regard to our standards of proficiency, and completely independent of the Board and its licensing requirements, would not only be grossly unfair to our resident public accountants who are required to comply therewith, but would inevitably result in a lowering of such standards. This was the view of the U.S. Supreme Court in a somewhat analogous situation, involving a statute regulating the insurance business. In Robertson v. California, supra, in holding that such statute was applicable to out-of-state insurance companies doing business in California, the court said, 328 U.S. at page 460, S.Ct. at page 1171:
"In short, the result would be ultimately to force all of the states to accept the lowest standard for conducting the business permitted by one of them or, perhaps, by foreign countries. Inevitably, this would mean that Congress would be forced to intervene and displace the states in regulating the business of insurance. Neither the commerce clause nor the South-Eastern decision dictates such a result."
The contention of the appellants, on equal protection grounds, is so obviously without merit as to warrant no discussion.
It must be held, therefore, that the decree here reviewed correctly held that the provisions of Chapter 473 requiring out-of-state certified public accountants to obtain certificates from the Board as a condition precedent to practicing in this state, are immune to the attacks made upon them by the appellants.
But it is one thing to say that out-of-state certified public accountants must comply with the certification requirements to practice as certified public accountants in this state; it is another to hedge the application for such certificates with such residence and clerkship requirements as to make it impossible for an out-of-state certified public accountant to comply therewith.
The purpose of our statute, Ch. 473, is to make sure that only those persons who meet the high standards of proficiency established by the statute and the Board may practice as certified public accountants is this state. If the examination and the standards of the state in which an out-of-state certified public accountant was originally certified are the equivalent of those of this state, there would appear to be no valid reason for requiring, as a pre-requisite to the issuance of a reciprocal certificate, that the applicant therefor meet the residence and clerkship requirements of Section 473.19(2), Fla. Stat., F.S.A. Nor does it appear to be reasonably necessary, to accomplish the purpose of the Act, to require out-of-state certified public accountants who cannot comply with the reciprocity provisions of the Act and who desire to qualify, by examination, to practice in this state as certified public accountants, to meet the residence and clerkship requirements of the Act, Section 473.08, F.S.A.
We hold, therefore, that the contention of the appellants with respect to the impact of the Rule upon the Act, as a whole, in making it virtually impossible for them to practice as certified public accountants in this state, is well taken; that the Rule cannot constitutionally be applied to appellants, under the requirements of the Act as presently written; and that the appellants should be allowed *40 to continue to engage in the practice of accountancy under temporary certificates to fulfill specific engagements until such time as they have a reasonable opportunity to qualify, under either the reciprocity or examination provisions of the statute  without regard to residence or clerkship requirements thereof  for registration in this state as certified public accountants.
The decree reviewed is affirmed in part and reversed in part and the cause remanded for the entry of a decree in accordance with the opinions herein expressed.
It is so ordered.
DREW, C.J., and THOMAS, THORNAL, O'CONNELL, ERVIN and HOBSON (Ret.), JJ., concur.