194 So.2d 579 (1966)
Hugh Miller MERCER et al., Appellants,
v.
Arthur I. HEMMINGS et al., Appellees.
No. 34373.
Supreme Court of Florida.
November 23, 1966.
Rehearing Denied February 22, 1967.
*580 Hervey Yancey, Cromwell A. Anderson, Louis Bonsteel and Smathers & Thompson, Miami, for appellants.
Chester Bedell, Jacksonville, for appellees.
ROBERTS, Justice.
This cause is before the court on appeal from a "Supplemental Decree Pursuant to Mandate" entered by the trial court following the going down of the mandate of this court in Mercer v. Hemmings, Fla. 1965, 170 So.2d 33.
The facts of the case are stated in considerable detail in our former opinion. Among other things, it concerns the validity of a regulation promulgated by the appellees, as members of the Florida State Board of Accountancy ("the Board" hereafter) respecting the issuance of temporary certificates to out-of-state firms to fulfill "specific engagements" for accounting services in this state under contracts entered into outside the state, as authorized by Section 473.14, Florida Statutes, F.S.A. The regulation in question  paragraph (3) of Rule 20-9.03 of the Board  was attacked in a suit for declaratory relief filed by the appellants, plaintiffs below, as members of the firm of Price Waterhouse & Co., a large firm of public accountants engaged in a nation-wide accounting business. All members of the firm are licensed as certified public accountants in one or more states of the union; however, none is licensed in Florida as a Certified Public Accountant, nor did any member reside in this state at the time the suit was filed.
Because of the stringency of our statutory regulations respecting the licensing of certified public accountants and the practice of public accounting in this state by such certified public accountants, Price Waterhouse has been unable to perform accounting services in this state for its out-of-state clients engaged in interstate commerce except under the authority of temporary certificates which were routinely issued to it by the Board for a great many years. In 1962, however, their "specific engagements" had grown to such an extent as to require the establishment of permanent offices in Miami and Tampa, and the permanent assignment of personnel to those areas. Upon learning of this, the Board *581 adopted paragraph (3) of Rule 20-9.03, reading in part as follows:
"Temporary certificates will not be issued to firms or persons maintaining a full time staff in the State of Florida, and using facilities for full time practice of public accounting as distinguished from fulfilling specific engagements under temporary certificates.",
and notified Price Waterhouse that it would deny further temporary certificates as long as Price Waterhouse maintained a full time staff resident in Florida.
This suit for declaratory relief followed, in which Price Waterhouse sought a ruling either (1) that the above-quoted provision of Rule 20-9.03 and the statute taken together, as applied to Price Waterhouse, were invalid; or (2) that Price Waterhouse could continue its public accounting practice in this state so long as it did not hold itself out to the public as a firm of Florida certified public accountants. The second contention was made in reliance on the decision of this court in Florida Accountants Association v. Dandelake, Fla. 1957, 98 So.2d 323, 70 A.L.R.2d 425. The defendant Board, appellees here, filed a counterclaim, asking the court to enjoin Price Waterhouse from practicing accounting in this state except under the temporary certificates theretofore issued by the Board or such other certificates as might thereafter be lawfully issued by the Board.
The trial court denied the relief sought by Price Waterhouse and granted that sought by the Board. On appeal to this court, the decree of the trial court was affirmed in part and reversed in part and the cause remanded to the lower court. Pursuant to our mandate, and after a hearing, the trial court entered its "Supplemental Decree Pursuant to Mandate," which decree has been brought here for review by Price Waterhouse. One of the complaints made here by the appellant is that the Supplemental Decree did not delete the injunction previously entered against Price Waterhouse, upon the counterclaim of the Board, and simply stayed the enforcement thereof until such time as the members of the firm of Price Waterhouse could become certificated in this state by reciprocity or examination. By motion, the Board has asked this court to vacate the stay of injunction, for the reason that it is impossible, under existing statutory provisions, for Price Waterhouse to qualify each and every member of the firm for licensing as a Florida certified public accountant, by examination or by reciprocity, thereby making it impossible for the firm to engage in the practice of public accounting in this state except under temporary certificates.
The problem is not now new here. The activities of the Board have been before this court in Morgan v. Oosterhoudt (Fla. 1957) 96 So.2d 139; Florida Accountants Association v. Dandelake (Fla. 1957) 98 So.2d 323, 70 A.L.R.2d 425; Mercer v. Hemmings (Fla. 1964) 170 So.2d 33, and now again in the Mercer case to review the judgment on remand of the trial court; also before the District Court of Appeal, First District, in Bevis v. Eastland (Fla. 1966) 186 So.2d 818, now pending here on writ of certiorari.
In the case sub judice, the litigants have submitted a number of questions. After blowing the chaff from the grain, the controversy to be decided is:
(1) Is it necessary for all the partners in Price Waterhouse to hold Florida certificates in order for such firm to practice in this state?
(2) Is it lawful for a person holding a Florida certificate, to practice accounting thereunder by accepting employment from Price Waterhouse and selling their work product to Price Waterhouse for use in making the master audit of interstate clients?
(3) Are the members of Price Waterhouse entitled to the issuance of a reciprocal certificate upon displaying *582 a certificate issued by another state which does not necessarily have the same admission requirements as Florida and which members are not two-year residents of this state?
(4) Are members of Price Waterhouse, who do not meet the two-year residence requirement, but who meet the other admission requirements entitled to take the Florida examination?
(5) Does Price Waterhouse have the right, as distinguished from the privilege, to continue to receive temporary certificates notwithstanding Board Rule 20-9.03?
Upon the authority of Morgan v. Oosterhoudt, supra, we held that a non-resident firm of accountants cannot practice as a firm or under a firm name unless every member of such firm holds a Florida certificate. Section 473.16, Florida Statutes, F.S.A., among other things provides:
"It is unlawful for any person holding a certificate as a certified public accountant * * * to act as the representative, agent or manager, in the state [of Florida], in connection with the practice of public accounting, of any person not authorized under the provisions of this chapter to practice public accounting in this state, or of any firm or association of persons, unless each member of such firm or association of persons shall be authorized to practice public accounting in this state under the provisions of this chapter; * * *".
However, this statute was certainly not intended to prevent a Florida certified public accountant from making audits within this state under the employment of and for the use of accounting firms in other states in making master audits of clients engaged in interstate commerce. A contrary construction would put the constitutionality vel non of the statute in grave doubt under the constitutions of the United States and the State of Florida. It has long been the policy of this court, where possible, to place such construction on a statute as would preserve its constitutionality. In Morgan v. Oosterhoudt, supra, the view of this court was expressed in this language:
"We do not think the statute prohibits a licensed Florida accountant from practicing public accounting in this state in his own name, even though he may have an interest in a non-resident firm of accountants; he is simply prohibited from practicing in this state as a member of such firm and from representing that such firm is practicing as `Certified Public Accountants' unless the members thereof are Florida CPA's. This does not appear to be unreasonable in view of the fact that the qualifications prescribed for certified public accountants and the administration of such Acts must necessarily vary from state to state."
We now become concerned over the right in contrast with the privilege of the members of Price Waterhouse, all of whom hold certificates in some state, to have reciprocal certificates issued to them by the Florida Board. This identical question was decided by the District Court of Appeal, First District, in Bevis v. Eastland (April 28, 1966) 186 So.2d 818, and we quote with approval from that decision:
"We will first dispose of petitioners' contentions that the action of the Board is `* * * in violation of petitioners' rights under the Florida and United States Constitution.' A concise definition of reciprocity is set out in Volume 36, Words and Phrases, Permanent Edition, p. 770, viz.: `"Reciprocity" denotes mutuality, or the relationship existing between states when each gives citizens of other certain favors or privileges that its own citizens enjoy at hands of other state; and applicant for certificate of registration as professional engineer has *583 no vested right to have board issue him certificate merely because he held certificate of registration granted him by proper authorities in another jurisdiction.' Also see Spindel v. Jamison (1958), 199 Va. 954, 103 S.E.2d 205, 208. Thus, it is apparent that the reciprocal certificates as outlined in the quoted statute are `privileges', as distinguished from `rights', which privileges have been authorized by the grace of the sovereign state of Florida. It necessarily follows that the grant of such privileges by the sovereign does not create a constitutional right in the applicants to practice their profession of accountancy in the state of Florida under Chapter 473, Florida Statutes, F.S.A.
"We next go to the question of whether the denial of the Petitioners' applications for reciprocal certificates on the ground of nonresidency is contrary to fact and law. Petitioners take the position that Mercer v. Hemmings, as a matter of law, struck `residence' as a prerequisite for qualifying under the statutory reciprocity provision and concluded that the Board cannot consider such condition in weighing `similar privileges' as set out in the statute authorizing the granting of reciprocal certificates. Such a contention cannot be sustained. In short, the Board has construed the reciprocal statute to mean that it authorizes the granting of a certificate to an applicant who was originally certified in another state, if that state would do likewise for a Florida resident who is in a similar situation. If such criterion is not met, the Board is well within its discretionary power to refuse to grant reciprocity, and we find in this record competent evidence to sustain the finding of the Board."
The rationale of our holding in Mercer v. Hemmings, Fla., 170 So.2d 33, was that the lack of two years of residence would not operate to prevent an applicant otherwise qualified from taking the examination, nor from receiving a reciprocal certificate where the applicant is otherwise eligible and the state of certification does not require residence; but it was not our intention to eliminate residence as a requirement of reciprocation where the state of certification requires residence.
The statute gives the Board wide discretion in the issuance of reciprocal certificates and also temporary certificates, but the Board must remember that this is not an unbridled discretion and the abuse of it can become a judicial question. We do not know from the record before us whether or not the Board has granted reciprocal certificates to some persons not employed by Price Waterhouse from states requiring residence and then refused to issue certificates to Price Waterhouse partners certified in the same states, but we do observe that there been more than three hundred reciprocal certificates issued. The vesting of discretion in any administrative agency carries with it much authority, but that authority is interwoven with responsibility to exercise such discretion in a not unreasonable manner. We cannot refrain from commenting that it does look a bit odd that over three hundred reciprocal certificates have been issued to other non-resident accountants, while every application considered of a partner in Price Waterhouse thus far has been denied. In this connection compare State ex rel. Markley v. Bartlett, 130 Conn. 88, 32 A.2d 58.
The question then arises as to requirement for two years residence in Florida prior to the taking of the examination, where the applicant meets the other requirements. See Florida Statutes Sec. 473.08 (1 and 3.), F.S.A. The regulation of the profession of accounting is an exercise of the police power, for the benefit and protection of the public and is not intended as economic protection for the profession from prospective competitors. Little, if any, reason can be found for requiring a certified public accountant of another state to cease his profession, close his office, and bask in the Florida sunshine *584 for a period of two years before taking the examination. Successful and worthy persons in other states, the kind of citizens we want in Florida, are from a practical standpoint banned from ever becoming Florida Certified Public Accountants. Our state spends large sums of money each year advertising the advantages of Florida residence, and it would be strange indeed to invite people to reside here but deny them the privilege of taking a professional examination until a long period of residence could be established. Florida is not an island, nor is a visa or passport required of citizens of the United States upon entering it; nor is a visa certifying to two years of residence or clerkship within our borders required to enter a professional examination. We hold that it is unreasonable to require two years of residence or clerkship within the state as a prerequisite, and the portion of the statute, so requiring, is unreasonable and void.
In State ex rel. James v. Gerrell (Fla.) 188 So. 812, the Court in striking down a residency requirement for an auctioneer's license said:
"Section Eight of Chapter 18069 also provides that it shall not apply to any person who is a resident of Florida engaged in selling goods, wares, or merchandise for a period of twelve months in the year, provided said person, firm, or corporation shall have maintained and conducted an established place of business for such purposes, and has been engaged in such business for a period of not less than five years in the community wherein the auction sale is to be held.
"Here we have a classification based on residence and the length of time one has been engaged in business. This Court has condemned classifications based solely on the ground of residence or on the difference of time the persons licensed have been engaged in business, and there appearing no other basis for this classification, we are impelled to hold it bad."
In Harper v. Galloway, 58 Fla. 255, 51 So. 226, 26 L.R.A.,N.S., 794, 19 Ann.Cas. 235, the court struck down a law placing an additional burden on non-resident hunters of Marion County because it violated the Fourteenth Amendment of the Constition of the United States. Again, in Hamilton v. Collins, 114 Fla. 276, 154 So. 201, this court struck down an ordinance exacting different license fee for selling bakery products in the city by a non-resident because it violated the 14th Amendment to the Constitution of the United States and Section 12 of the Declaration of Rights, F.S.A. See also Accounting Corporation of America v. State Board of Accountancy, 34 Cal.2d 186, 208 P.2d 984, in which the Supreme Court of California said:
"But where a statute discriminates against individuals or corporations solely because they are new to the field and such discrimination does not appear to have any relation to the public interest, the legislation disregards constitutional protections against arbitrary classification. Mayflower Farms v. Ten Eyck, 297 U.S. 266, 56 S.Ct. 457, 80 L.Ed. 675; Del Mar Canning Co. v. Payne, 29 Cal.2d 380, 175 P.2d 231; Van Harlingen v. Doyle, 134 Cal. 53, 66 P. 44, 54 L.R.A. 771; Soares v. City of Santa Maria, 38 Cal. App.2d 215, 218, 100 P.2d 1108; In re Fasset, 21 Cal. App.2d 557, 69 P.2d 865."
In Wormsen v. Moss, 177 Misc. 19, 29 N.Y.S.2d 798, the Supreme Court of New York struck down a residence requirement as a prerequisite to the issuance of a license to act as a massage operator, and said (p. 801):
"In so far as one is deprived of the right to labor, his liberty is restricted, his capacity to earn wages and acquire property is lessened, and he is denied the protection which the law affords those who are permitted to work. Smith v. State of Texas, 233 U.S. 630, 636, 34 S.Ct. 681, 58 L.Ed. 1129, L.R.A. 1915D, 677. Ann.Cas. 1915D, 420. That broad affirmation of our respect for the free *585 right to labor is subject to the qualification that the right may be interfered with by the state, in the exercise of its general police power, in the interests of health, morals, safety or welfare of the community. Such action of the state must however, be reasonable, bear a just and reasonable relation to the promotion of the general welfare, and avoid arbitrary discrimination between persons. A statute enacted in the exercise of the police power must have been passed to prevent some manifest evil or to preserve public health, morals, safety or welfare. The test is always whether the regulation is reasonable within those limits. Smith v. State of Texas, supra; Burns Baking Co. v. Bryan, 264 U.S. 504, 44 S.Ct. 412, 68 L.Ed. 813, 32 A.L.R. 661; People v. Crane, 214 N.Y. 154, 108 N.E. 427, L.R.A. 1916D, 550, Ann.Cas. 1915B, 1254, affirmed, 239 U.S. 195, 36 S.Ct. 85, 86, 60 L.Ed. 218; Ives v. South Buffalo Railway Co. 201 N.Y. 271, 94 N.E. 431, 34 L.R.A., N.S., 162, Ann.Cas. 1912B, 156; * * *
"* * * Classification as between citizens and aliens is permissible, but the classification must have some reasonable basis in the welfare of the community."
The court then recited from Miller v. City of Niagara Falls, 207 App.Div. 798, 202 N.Y.S. 549, and also recited from Magnani v. Harnett, 257 App.Div. 487, 14 N.Y.S.2d 107, affirmed 282 N.Y. 619, 25 N.E.2d 395:
"* * * In the present case the relator's business is in no way injurious to the morals, the health, or even the convenience of the community, provided only he has the requisite knowledge upon the subjects prescribed by the legislature to practice his calling without endangering the health of his patrons."
We think the language taken from the Magnani case, supra, applies here. So long as the certified public accountant is otherwise qualified, we see no way in which his lack of two years' residence can be injurious to the morals, health, safety or welfare of the community.
We know from experience here that there are many overlapping and conflicting statutes and rules regulating the professions and regulated and unregulated vocations. For example: Between medical doctors, dentists, osteopaths and chiropractors; also between architects and, engineers; lawyers and licensed realtors in the handling of real estate transactions, certified public accountants, uncertified accountants and bookkeepers; registered nurses and practical nurses; barbers and beauticians, licensed masseurs and reducing gymnasiums, and so on. It has been necessary in the judicial process to resolve these conflicts by the application of a reasonable interpretation in the construction of the conflicting regulations. Compare: Keyes Co. v. Dade County Bar Association (Fla. 1950) 46 So.2d 605, and Florida Board of Massage v. Underwood (Fla. 1950) 45 So.2d 184, 17 A.L.R.2d 1181. And so it is that almost always the question of whether or not certain conduct falls within the condemnation of the regulatory statute is a mixed question of law and fact. In this case, the chancellor, after hearing voluminous testimony, held:
"The accounting services that have been rendered by the plaintiff partners in Florida under such temporary certificates and that are being rendered by plaintiff partners in Florida and in which plaintiff partners' Florida employees are engaged and in which plaintiff partners' Florida offices are used, were not and are not ordinary or routine accounting services such as are or may lawfully be performed by bookkeepers but were and are services that only certified public accountants or public accountants are qualified and eligible to perform, consisting of the examination and auditing of books, statements and other records prepared and kept by others, and the preparation of reports of such examinations and audits, including certificates and *586 expressions of opinions as to the correctness and fairness of the matters certified, and consisting in large part of the preparation and certification or reports and statements to be filed with public agencies of the Federal Government, the State of Florida and other governmental agencies requiring certification of such statements by independent public accountants, as well as the preparation and certification of financial statements to be presented to banks and other lending institutions in connection with applications for loans or extensions of credit. The work performed by these Florida employees was and is performed under the supervision of one or more of the plaintiff partners."
We agree that such finding of fact is supported by the record, and constitutes a violation of the statute.
We now come to the last material question, as to whether or not the Board has the power to refuse temporary certificates. Florida Statute 473.14, F.S.A. provides:
"473.14 Temporary certificate.  The board may, in its discretion, adopt rules and regulations providing for the issuance of temporary certificates to persons for the purpose of enabling such persons to fulfill specific engagements or employments, the contracts for which were entered into beyond the limits of the state."
What we have said previously in this opinion concerning "discretion" applies here, but we hold that Section 473.14 is a valid exercise of legislative power and that Rule 20-9.03, on its face is within the lawful power of the Board.
In summary, we hold:
1. It is necessary for all partners in Price Waterhouse to hold a Florida certificate before the firm can practice as certified public accountants in this state.
2. It is lawful for a person holding a Florida certificate to practice accounting thereunder, accepting employment from Price Waterhouse as a client and selling their work product to Price Waterhouse for use in making the master audit of interstate clients.
3. The members of Price Waterhouse are not entitled, as a matter of right, to the issuance of a reciprocal certificate upon displaying a certificate issued by another state which does not necessarily have the same admission requirements as Florida, but are entitled to a fair and reasonable exercise of the Board's discretion.
4. Members of Price Waterhouse who do not meet the two-year residence requirement, but who meet the other admission requirements, are entitled to take the Florida examination, because the section of the statute requiring two years' residence is void.
5. Price Waterhouse does not have the right, as distinguished from the privilege, to continue to receive temporary certificates notwithstanding Board Rule 20-9.03, but they are entitled to have the impartial and reasonable exercise of the Board's discretion.
Nothing in this opinion shall be construed as receding from any part of the decision of this court in Florida Accountants' Association v. Dandelake, (Fla. 1957), 98 So.2d 323, 70 A.L.R.2d 425.
This litigation originated in a court of equity. The continuity of important business institutions requires that a reasonable time, to be fixed by the chancellor, be allowed for the Florida clients of Price Waterhouse to make an appropriate transition of their business and to allow time for persons involved in this case, so desiring and qualified, to stand the examination for a C.P.A. Certificate.
Accordingly, the cause is affirmed in part and reversed in part and remanded to *587 the chancellor for further consideration not inconsistent with this opinion.
It is so ordered.
THORNAL, C.J., and THOMAS, O'CONNELL, CALDWELL and ERVIN, JJ., and KANNER, District Court Judge (Retired), concur.