621 So.2d 426 (1993)
DEPARTMENT OF PROFESSIONAL REGULATION, BOARD OF ACCOUNTANCY, Appellant/Cross-Appellee,
v.
Richard RAMPELL, Appellee/Cross-Appellant.
No. 79371.
Supreme Court of Florida.
July 1, 1993.
*427 Robert A. Butterworth, Atty. Gen. and John J. Rimes, III, Asst. Atty. Gen., Tallahassee, for appellant/cross-appellee.
Robert M. Montgomery, Jr. of Montgomery & Larmoyeux, P.A., and Philip M. Burlington of Edna L. Caruso, P.A., West Palm Beach, for appellee/cross-appellant.
Kenneth R. Hart and Steven P. Seymoe of Ausley, McMullen, McGehee, Carothers & Proctor, Tallahassee, amicus curiae for The Florida Institute Of Certified Public Accountants.
GRIMES, Justice.
We review Department of Professional Regulation, Board of Accountancy v. Rampell, 589 So.2d 1352 (Fla. 4th DCA 1991), to determine the validity of sections 473.323(1)(l) and 473.317(1), Florida Statutes (1989). We have jurisdiction pursuant to article V, section 3(b)(1) of the Florida Constitution.
Richard Rampell is a certified public accountant (CPA). When he called two businesses to offer his accounting services, a competing CPA firm filed a complaint against him with the Department of Professional Regulation, Board of Accountancy (Department). Rampell then filed a declaratory judgment action, challenging the constitutionality of section 473.323(1)(l), Florida Statutes (1989), which prohibits CPAs from engaging in personal solicitation. He also challenged the constitutionality of section 473.317, Florida Statutes (1989), which bans certified public accountants from making "a competitive bid for a professional [attest] engagement." The statutory reference to the so-called "attest" function refers to the process by which only CPAs are permitted to audit financial statements and express opinions as to those financial statements.
The trial judge declared both statutes unconstitutional. The district court of appeal affirmed this ruling with respect to the competitive bidding statute but upheld the constitutionality of the solicitation statute.

I. SOLICITATION
Section 473.323(1)(l) prohibits CPAs from "[e]ngaging in direct, in person, uninvited solicitation of a specific potential client." Pursuant to this statute, the Board promulgated Florida Administrative Code Rule 21A-24.002 (1981) prohibiting:
any direct, in person, uninvited solicitation ... [of] an engagement to perform public accounting services: ... (c) where the engagement would be for a person or entity not already a client of the [CPA].
Florida Administrative Code Rule 21A-24.002(3) defines a "direct, in person, uninvited solicitation" as "any communication [including uninvited visits, conversations, or telephone calls] which directly or implicitly requests an immediate oral response from the recipient."
While the case has been pending in this Court, the United States Supreme Court issued its opinion in Edenfield v. Fane, ___ U.S. ___, 113 S.Ct. 1792, 123 L.Ed.2d 543 (1993), which resolves the solicitation issue. The Court held Florida's Board of Accountancy Rule 21A-24.002, prohibiting solicitation, to be unconstitutional as a violation of the right to free speech.

II. COMPETITIVE BIDDING
Section 473.317(1) provides as follows:
(1) A licensee shall not make a competitive bid for a professional engagement in which the licensee will attest as an expert in accountancy to the reliability or fairness of presentation of financial information or utilize any form of disclaimer of opinion which is intended or conventionally *428 understood to convey an assurance of reliability as to matters not specifically disclaimed.
A CPA may not quote a fee on any basis, including a minimum fee or an hourly rate. § 473.317(2), Fla. Stat. (1989); Fla. Admin. Code R. 21A-24.003.
The Legislature has provided a statutory procedure by which a client may select a CPA firm. § 473.317(5), Fla. Stat. (1989). Where more than one CPA firm is competing for an attest engagement, the potential client must rank the firms in order of preference before entering into negotiations with any firm. If negotiations with the highest ranked firm fail, "formal termination" is required before the client may enter into negotiations with the next ranked firm. "Formal termination" prohibits the client from entering into a contract with the terminated firm for that engagement. During the selection process, the client receives no price information until negotiations begin with a particular firm. The resulting effect is a complete ban on competitive bidding for private attest engagements.[1]
By prohibiting CPAs from competitive bidding, the Department restricts economic expression constituting commercial speech. Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc., 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976). For a statute which regulates protected speech to pass constitutional muster, the statute must directly advance a substantial government interest without being more extensive than necessary. Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n, 447 U.S. 557, 566, 100 S.Ct. 2343, 2351, 65 L.Ed.2d 341 (1980). Thus, section 473.317 must be analyzed in light of the four-prong test set out in Central Hudson Gas & Elec. Corp.
First, we must determine whether the First Amendment protects price information for attest engagements. To be afforded constitutional protection, a CPA's bid must concern lawful activity and not be misleading. Obviously, a CPA's auditing function falls within the ambit of lawful activity. The Department contends, however, that bidding for an attest engagement is inherently misleading. Contrary to the advertisements for prices of standardized legal services upheld in Bates v. State Bar of Arizona, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977), the Department asserts that an audit service does not lend itself to bidding. The Department argues that a CPA who quotes a price before analyzing the scope of the necessary work is likely to fail to perform competent professional work or be forced to constantly renegotiate as a result of the client's unique problems. Because persons other than the client rely on the CPA's attesting certification, the public is in danger of being harmed.
Essentially the same basic argument concerning price advertising was rejected in Bates:
We are not persuaded that restrained professional advertising by lawyers inevitably will be misleading.... Although the precise service demanded in each task may vary slightly, and although legal services are not fungible, these facts do not make advertising misleading so long as the attorney does the necessary work at the advertised price.

433 U.S. at 372-73, 97 S.Ct. at 2703 (emphasis added) (footnotes omitted). Even if an audit is underbid, only the unethical CPA will perform inadequate work. Moreover, the Department has never explained how a bid based upon an hourly rate will lead to the failure of a CPA to spend an adequate amount of time on an audit. If the client's problems are greater than anticipated, the CPA will work additional hours and be compensated at the rate agreed upon between the parties. We do not believe that *429 competitive bids for attest engagements will be inherently misleading.
Next, we must determine whether the Department asserts a substantial interest in prohibiting competitive bidding. We agree with the court below that the State has a substantial interest in "maintaining the quality and independence of the attest function performed for clients but relied upon by governmental agencies as well as the public at large." Rampell, 589 So.2d at 1359. The State's interest in regulating skilled professions also relates to the ban on competitive bidding. See Mercer v. Hemmings, 170 So.2d 33, 39 (Fla. 1964).
Having decided that the first two prongs of the Central Hudson Gas & Elec. Corp. standard have been met, we must now determine whether the regulation directly advances the government interest asserted. The Board maintains that the prohibition directly advances the quality and independence of audits by forcing a focus on merit, rather than on price, in the client's selection of a CPA firm. However, the United States Supreme Court has noted that "people will perceive their own best interests if only they are well enough informed." Virginia State Board of Pharmacy, 425 U.S. at 770, 96 S.Ct. at 1829. The State may not "completely suppress the dissemination of concededly truthful information about entirely lawful activity, fearful of that information's effect upon its disseminators and its recipients." Id. at 773, 96 S.Ct. at 1831.
At the trial, the Department presented the expert testimony of Messrs. Dooner and Schine to support the competitive bidding prohibition. Dooner expressed the opinion that a CPA who submits a competitive bid is more likely to fail to properly analyze the scope of the audit engagement. Dooner pointed to a report on CPA audit quality issued by the United States General Accounting Office (GAO) in August 1987 which contained a finding that where cost was the only consideration in selecting an auditor, 90% of the audits were unacceptable. However, the GAO report did not determine that that finding justified a prohibition on competitive bidding. In fact, the GAO report recommended competitive bidding for audit services, and considered that element to be a "critical attribute" for the effective procurement of audit services. Dooner admitted that competitive bidding for audit services is permissible in every other state and that there has never been a study which indicates that it adversely affects the quality of audits in those states.
Schine also relied on the GAO report as the sole empirical basis justifying the prohibition against competitive bidding. He admitted that his firm, which operates nationally, engages in-competitive bidding in other states and that it had not affected the quality of its audits. We believe the trial court could properly conclude that there were clearly in place sufficient provisions to protect the asserted state interest. As noted in the final judgment:
Countervailing forces, the possibility of legal liability, professional discipline, loss of reputation and professional pride would certainly tend to restrain a member from compromising the quality of his work.
The statute does not prevent poor work; it only eliminates price competition. Accordingly, the regulation fails this prong of the test.
Finally, the Department's ends must reasonably fit with the means chosen to accomplish those ends to prevent the regulation from being overly extensive. See Board of Trustees of State Univ. v. Fox, 492 U.S. 469, 480-81, 109 S.Ct. 3028, 3034-35, 106 L.Ed.2d 388 (1989). According to the statutory scheme, once there have been negotiations with prospective CPAs in their descending order of merit, the client can only hire the last firm with which negotiations occurred even if the client is now convinced that one of the higher rated firms could do a comparable job at a better price.[2] The total prohibition of price competition *430 is not a means narrowly tailored to achieve the desired result of quality audits.
The Department may regulate the profession of accountancy in an attempt to assure quality audits, but its regulations may not restrict economic expression protected by the First Amendment. Thus, we approve the decision of the court below on the issue of competitive bidding, but we quash the decision with respect to the use of solicitation. We hold both sections 473.323(1)(l) and 473.317 and the regulations enacted thereunder to be invalid as unconstitutional restrictions of protected commercial speech, in violation of the First Amendment of the United States Constitution.
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, SHAW, KOGAN and HARDING, JJ., concur.
NOTES
[1] In the final judgment holding section 473.317 unconstitutional, the trial court stated:

Clients want to know what CPAs charge before they are hired. CPAs want to tell them, but the Florida Statutes say its a no-no. Department of Professional Regulations suggests that if price is mentioned or used as a criteria for hiring, the CPA's independence and integrity will be sacrificed. There was no evidence upon which to base such a fear.
[2] The fact that section 473.317(5)(b) permits the Legislature as well as municipalities to reopen negotiations with any of the three top-ranked firms suggests that even the Legislature itself does not view competitive bidding as an unmitigated evil.